The opinion of the Court was delivered by
WitheRs, J.
Except free Indians in amity with the Government, and negroes, mulattoes and mustizoes, then free, the Act of 1740 (7 Stat. 397) declared all Indians, negroes, mulattoes and mustizoes, then in the province, or thereafter to be, absolute slaves, the issue to follow the condition of the mother. A provision, however, was made, in the same section that enacted as above, being the first in the Act, to vindicate the freedom of any *274 one of either of the said classes who might be disposed to claim that right. The Act declares that the prima facie presumption shall be that such person is a slave and must assume the burthen of proof; this is a presumption which arises upon the color. The Court of Common Pleas was opened to such applicant, upon petition, either in term time or in vacation, for the appointment of a guardian of the claimant, who was declared to be entitled to an action, in nature of ravishment of ward, against any person in possession of or claiming such Indian, negro, mulatto or mustizo, who was required to enter into recognizance, with one or more sufficient sureties, to the plaintiff, in a sum to be fixed by the Court, with condition that he shall produce the ward of the plaintiff at all times when required by the Court, and that the ward shall not be eloigned, abused or misused during the pendency oí the litigation. It was provided that the general issue might he pleaded, and special matter adduced in evidence under that issue : that upon verdict, general or special, judgment should follow according to the very right of the cause, irrespective of any defect in form or substance: that if the claimant succeeded, a special entry should he made declaring his or her freedom, and that the jury should assess damages against the defendant in behalf of the wg,rd, for which, with full costs of suit, judgment should be entered and execution awarded: that if unsuccessful, the ward shall be subject to corporeal punishment, short of life or limb, in the discretion of the Couit. Finally there was a saving of the jurisdiction of any other Court, in law or equity, which then had cognizance of the question of the right of property in slaves, or the claim of freedom, when the same should happen to come in judgment, such Court being required always to take the Act of 1740 for its direction therein, (a).
*275 In the present case, the wards, instead of pursuing the mode thus carefully prescribed and minutely detailed, have resorted to the writ de homine replegiando. This proceeding has been met by demurrer, and that has been sustained upon circuit. The appeal comes here to reverse that decision; and the question is, are the parties, plaintiffs, confined to the mode prescribed by the statute of 3740.
It will appear, from what is set forth in the note subjoined, that in 1712, the like question, involved in the case before us, was to be heard finally by the Governor and Council; in 1722 and 1735 different tribunals were prescribed to hear and determine the same, exclusively. In 1740, the Court of Common Pleas was, in addition to the County and Precinct Courts and that oí General Sessions and Goal delivery, clothed with authority to determine the question. The jurisdiction df any other Court of law or equity in the province, then having such j urisdiction, was saved, where the question happened to come in judgment before them ; but they were required to be guided by the Act of 1740.
Since the form of proceeding was prescribed by that Act, we are not aware that any other has been used in this State to adjudicate the question in this case. Frequently has that mode been employed, and successfully. Many cases have never reached the appellate tribunal; sundry others are found in our Reports, attesting the efficacy of the statutory provision Such may be seen in 1 Bay, 260 ; 2 lb, 436 ; 1 Mill, 137 ; 1 McM. 135 ; which last made even the keeper of the work house in Charleston answerable, under the Act of 1740, though he was only the custo-diary,'under law, of one lodged- as a slave. In some cases, no inconsiderable sum in damages has been rendered by a jury in behalf of a person unjustly despoiled of liberty : nor, from any thing we glean from the records of the past, or know of the present temper of our people, can we indulge a doubt of the unflinching resolution of the tribunal charged with the function, to give fair scope and full efficacy to the remedial justice enjoined by the statute.
The writ de homine replegiando, employed in this case, though *276 one of the four forms of process known to the common law, whereby the personal liberty of the individual might be vindicated, has grown quite into disuse in England, having been superseded by that oí habeas corpus, especially since it has been rendered so efficient, in certain cases, by the celebrated Act of Charles the Second. This writ to replevy the person, who alleges that he is unjustly seized and detained, is' urged as especially suitable to the class as to whom this question chiefly arises, to wit, the class of negroes really free: and this proceeds upon the circumstance that the claimant would enjoy his 'freedom pen-dente lite: whereas according to the statutory mode, the claimant remains statu quo, iii the mean time. That difference in the two forms of proceeding does certainly exist. But it is not to be forgotten, that, by our law, that individual, of any one oi the several species of a defined and inferior status, who may be found in possession of a white person claiming the right of ownership, is presumed to be a slave, with the right to rebut the presumption : but how ? Upon fair and sound construction only, we think, according to the mode prescribed by statute. In addition to this, it is appropriate to observe, that the advantage to the claimant, suggested in the argument, is very doubtful. According to Lord Holt, in More vs. Watts, (reported at large in 1 Ld. Raym. 613; S. C. 12 Mod. 425, and the pleadings in it to be found in Lilly’s Ent. 2931, whoever sues out the writ de homine replegiando, if the defendant claims the party as his villein, (which will be a good return for the sheriff), shall not be reple-vied, or delivered by the sheriff, “ until he give security, and that in Court: and when the plaintiff comes in upon that security, so entered into in Court, he is not at large, but to find new surety that he shall appear from day to day pending the cause; and if judgment go against him, he shall render himself to the defendant, and he shall take him out of Court.” The plaintiff, or claimant, is to give surety to prosecute his suit with effect, that is, to establish his right to freedom, and in Covenhoven vs. Seaman. (1 Johns. Ca. 23), such a bond was declared forfeited, though the slave had been rendered to the master, because he *277 had not prosecuted his suit with effect. A course of proceeding attended by such incidents, promises little facility to a claimant, such as must generally be engaged in a litigation like the present. The scheme marked out in 1740 is, for the claimant of freedom, far more simple, direct, expeditious and practicable far more effectual for the security of the rights of both parties. That the old common law proceeding is calculated to be extremely mischievous to one who turns out to be really the master, is scarcely denied at the bar, and will be strongly conceived by him who will consult the particulars of the case of More vs. Watts, in the several books where it appears : for it will be seen if the claimant fail to give surety, he is to go into the custody of the prison keeper. Surely this is not an agreeable result to the master. So likewise the master is liable to be captured by a capias in withernam, bailable, to be sure, provided he pleads “non cepit” but this would be impracticable for one, really master, who had exercised the right of capturing his slave, and thus, it is possible, that, under the proceeding chosen in the present case, an absolute slave might be at large, on bail, and his master in custody. (See the observations of Holt, in More vs. Watts, 1 Lord Raym. 617.) The proceeding is based upon a fictitious surmise: it is involved, or may be, in multiplied perplexities. : it borrows all that belopgs to a roplevy of goods : it may almost reverse the position, for a time, of master and slave. That one in possession of another, as a slave, shottld be subjected to such a condition, however temporarily, or rendered liable thereto, in a country where the legal presumption is, pendente lite, that such relation is rightful, and that presumption arising from the caste, is so wholly incongruous that we are driven to conclude in favor of the position, that a question, such as the present, is determinable only according to the scheme oí the Act of 1740.
This result is according to the decision of this case on circuit, and the motion is, therefore, refused.
O’Neall, Evans, Wardlaw and Frost, JJ. concurred.
Whitner, J. not present at the decision of the case.

Motion refused.

(a) Note by his Honor. This question of freedom was to-be finally heard, according to the Act of 1712, by the Governor and Council, (7 Stat. 352). and by “the Judges and Justices of the General Court in 1 Charles city, if the' dispute arises within the jurisdiction thereof, and by the Justices of the several County and Precinct Couris in open Court within their jurisdiction, and not elsewhere,” by the Act of 1722, (7 Stat 371); “ before the Judges and Justices of the Court of General Sessions and Jail delivery in open Court, at the sitting of the same, by a verdict of twelve men, and not otherwise,” by Act of 1735, (7 Stat. 385). Then followed the existing provision of 1740.